**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Kathy Hainey, <u>et al.</u>,          )
                                      )
            Plaintiffs,   ) Case No. 1:02-CV-733
                                      )
      vs.                             )
                                      )
                                      )
Carl L. Parrott, <u>et al.</u>,      )
                                      )
            Defendants.   )

O R D E R

        This matter is before the Court on cross-motions for summary judgment filed by Defendants Carl L. Parrot, <u>et al.</u> (Doc. No. 31) and Plaintiffs Kathy Hainey, <u>et al.</u> (Doc. No. 35).  For the reasons set forth below, Defendants' motion for summary judgment is not well-taken and is **DENIED**; Plaintiffs' motion for summary judgment is well-taken and is **GRANTED**.

I. <u>Background</u>

        This case presents difficult and emotional issues involving the coroner's statutory duty to perform autopsies, the retention of certain organs of the deceased for diagnostic purposes, Plaintiffs' wishes to recover all of the remains and bury their loved ones in as complete a state as the circumstances of death will permit, and whether Plaintiffs' constitutional rights were violated when the coroner's office retained and disposed of organs without notice to Plaintiffs.

The named Plaintiffs in this case and the class members they represent each had family members who died under circumstances in which the Hamilton County Coroner decided pursuant to his statutory grant of authority and discretion that an autopsy was necessary to determine the cause of death. Plaintiffs do not quarrel with the coroner's determination that an autopsy of their decedent was necessary. In performing the autopsies at issue, the most common scenario involves the coroner removing the brain of the deceased for examination. In order to prepare the brain for examination and to obtain tissue samples, it must be "fixed" by immersing it in a solution of formaldehyde and salt. The fixing solution causes the brain tissue to solidify for dissection. The process, however, takes approximately two weeks for the fixing solution to properly set the brain. After tissue samples are taken and microscopic slides are prepared, the case is presented at an internal neuropathology conference comprised of deputy coroners where the cause of death is determined.

The process outlined above takes about three weeks to complete.[1] In the interim and in the Plaintiffs' cases, the coroner's office completed the other necessary protocols of the autopsy promptly. This usually required two to three days. The

---

[1]    A similar protocol is required for examination of heart muscle and tissue. None of the named Plaintiffs' cases, however, involved fixing the deceased's heart.

organs which did not require fixing for forensic examination were re-sealed in the body cavity and the deceased's body was released to a funeral director.  The coroner's office did not notify Plaintiffs, either prior to or at the time of the release of the deceased's body, that it would be retaining the brain of their decedent for further forensic examination.  Nor did the coroner's office notify Plaintiffs when examination of the brain was complete so that they could, if they chose, recover the remains to be interred with the other remains of the decedent or for other disposition according to their wishes.  It appears that the coroner's office disposed of the remainder of the brain tissue according to its normal procedures, although it should be noted that nothing in the present record suggests that the handling of the remains was anything less than respectful.  Nevertheless, Plaintiffs believe that they have been deprived of a right to bury their loved ones in a complete-as-possible condition.  The question in this case is whether this right rises to constitutional dimensions.

Plaintiffs' first amended complaint alleges that the Hamilton County Coroner's practice or policy of retaining and disposing of their decedents' body parts and/or organs once an autopsy has been completed without notice and an opportunity to reclaim said body parts or organs constitutes a deprivation of their property interests in their decedents' remains without due

process of law.  Plaintiffs filed suit on behalf of themselves
and a class of similarly affected next-of-kin.[2]  Pursuant to 42
U.S.C. § 1983, Plaintiffs have sued Dr. Carl Parrott, both
individually and in his official capacity as the Hamilton County
Coroner, the Hamilton County Board of County Commissioners and
the individual members thereof in their official capacities.

On August 3, 2004, upon motion of the Plaintiffs, the
Court certified a class consisting of "all beneficiaries and
next-of-kin of decedents who have had their decedent's body parts
and/or organs removed and retained by defendants without consent
and/or in reckless disregard of whether there was any objection
or refusal by said next-of-kin to allow such procedure and taking
to occur."  Doc. No. 20, at 11-12.

Following the close of discovery, the parties filed
cross-motions for summary judgment.  The motions are now fully
briefed and ready for disposition.

II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The evidence presented on a motion for summary judgment

---

[2]  We use "next-of-kin" in a generic manner to indicate
any one or more persons entitled to claim a decedent's body from
the coroner's office.

4

is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties'

differing versions of the truth at trial." <u>First National Bank</u> <u>v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir.), <u>cert.</u> <u>dismissed</u>, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Id.</u> at 323; <u>Anderson</u>, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. <u>Id.</u>;

<u>Anderson</u>, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." <u>Id.</u>

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  <u>Id.</u>  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

III. <u>Analysis</u>

A. <u>The Property Interest at Issue</u>

As stated, Plaintiffs claim that the coroner's policy of retaining their decedents' organs and then disposing of them without notice deprived Plaintiffs of their property interest in the remains of their decedents without due process of law.  A potentially dispositive threshold issue is whether Plaintiffs have any constitutionally cognizable interest in the remains of their decedents.

Property interests are not found in the Constitution, but rather are created by state law.  <u>Whaley v. County of Tuscola</u>, 58 F.3d 1111, 1113-14 (6th Cir. 1995).  Although state law determines whether the property interest exits, federal constitutional law determines whether that interest is protected

by the due process clause.  Id. at 1114.  Plaintiffs contend that
Brotherton v. Cleveland, 923 F.2d 477 (6th Cir. 1991),
conclusively establishes that they have a constitutionally
protected property interest in the remains of their decedents,
including the body parts and organs.  Defendants argue that
Brotherton is distinguishable and that in fulfilling his
statutory duties in determining the cause of death, under state
law, the coroner's interest in Plaintiffs' decedents' body parts
is superior to Plaintiffs' interests.  Therefore, Defendants
contend, under the circumstances of this case, Plaintiffs do not
have any constitutionally protected interest in the organs
retained for autopsy.

Before beginning the actual analysis of Plaintiffs'
claimed property interest, a few preliminary observations are in
order.  First, Plaintiffs do not claim that the coroner violated
their constitutional rights by performing autopsies on their
decedents.  State law clearly gives the coroner complete
discretion in deciding when an autopsy is necessary, with or
without the next-of-kin's consent.  See Ohio Rev. Code §
313.13(A); Ohio Rev. Code § 313.131(B); Everman v. Davis, 561
N.E.2d 547, 550 (Ohio Ct. App. 1989).[3]  Second, Plaintiffs do not
claim that the coroner was not authorized to remove and retain

---

[3]     An exception, not relevant here, is when the coroner is
advised or has reason to believe that an autopsy is contrary to
the deceased's religious beliefs.  Ohio Rev. Code §§ 313.131(B) &
(C).  In such a case, the coroner must delay the autopsy for
forty-eight hours to give the deceased's friend or relative an
opportunity to file suit to enjoin the autopsy.

their decedents' brains for purposes of determining the cause of
death.  State law also clearly authorizes the coroner to maintain
custody of the deceased until he ascertains the cause of death or
determines that the body is no longer necessary to assist him in
the fulfillment of his duties.  See Ohio Rev. Code § 313.15.  By
implication, § 313.15 also gives the coroner the authority to
retain the body parts or organs which he needs to determine the
cause of death.  Rather, Plaintiffs contend that the coroner
should have advised them that it was necessary to retain the
brains of their decedents for purposes of performing the autopsy
and that upon completion of the autopsy, the coroner should have
notified them so that they could have retrieved the remains and
interred them according to their wishes.  Alternatively,
Plaintiffs contend that with prior notice from the coroner, they
could have decided to delay the recovery of their decedents'
remains until the autopsy was finished, so that the remains could
be restored as completely as possible before interment.
Nevertheless, Plaintiffs claim that the coroner's policy of not
giving them any notice whatever regarding the retention and
disposal of their decedents' brains deprived them of their
property interest in their decedents' remains without due process
of law.

        The primary case on point is Brotherton.  Brotherton
also involved the Hamilton County Coroner's office.  In that
case, state law authorized the coroner to remove the corneas of
autopsy subjects without specific consent provided he had no

9

knowledge of any objection by the deceased or the deceased's
spouse or next of kin.  Apparently in order to fulfill the
purpose of the statute in obtaining corneas for use as anatomical
gifts, the coroner adopted a policy of deliberate indifference
wherein no effort was made to determine whether there were any
objections to the removal of the deceased's corneas.  Brotherton,
923 F.2d at 482.  It appears that it was the policy of the
coroner not to cooperate with the local eye bank in determining
whether there were objections to removal of the corneas.  See
Brotherton v. Cleveland, 173 F.3d 552, 556 (6th Cir. 1999).  The
plaintiffs in Brotherton did not discover that their decedents'
corneas had been removed until they read the autopsy reports.
Subsequently, they sued the coroner and other state and county
officials under § 1983 for deprivation of the property interests
in their decedents' body parts without due process.  In
determining whether plaintiffs had a constitutionally protected
property interest in the remains of their decedents, the Court in
Brotherton studied earlier opinions by Ohio appellate courts as
well as decisions by other jurisdictions.  This survey of earlier
cases persuaded the Court that the plaintiffs did have a
constitutionally protected interest in their decedents:

> Although extremely regulated, in sum, these rights form
> a substantial interest in the dead body, regardless of
> Ohio's classification of that interest. We hold the
> aggregate of rights granted by the state of Ohio to
> Deborah Brotherton rises to the level of a "legitimate
> claim of entitlement" in Steven Brotherton's body,
> including his corneas, protected by the due process
> clause of the fourteenth amendment.

<u>Brotherton</u>, 923 F.2d at 482.  The <u>Brotherton</u> Court also concluded
that the defendants failed to provide the plaintiffs with the
necessary predeprivation due process which would have only
minimally burdened the state's interest in implementing the organ
donation program.  <u>Id.</u>

   At first blush, the holding in <u>Brotherton</u> appears to
establish a property interest in the decedent's remains in a very
broad fashion.  The question is whether <u>Brotherton</u> is
distinguishable from the facts of this case in any meaningful
way.  An important but not necessarily dispositive point of
distinction is that in the present case, the coroner's decision
to retain the deceased's brain was determined to be forensically
or scientifically necessary to determine the cause of death.  As
noted above, this decision appears to be completely within the
purview of the coroner.  In contrast, <u>Brotherton</u> involved what
amounted to state-sanctioned grave robbing.  Additionally,
because of the time required to fix the brain for proper forensic
examination, the coroner was in the unenviable position of having
to either: a) advise grieving next-of-kin that he would not
release the body of their relative for several weeks, thereby
prolonging and perhaps exacerbating the mourning and grieving
process for persons already distraught because their relative
died under circumstances requiring an autopsy; or b) releasing
the body to the next-of-kin and then, following completion of the
neuropathology conference, performing the somewhat gruesome task
of informing that them that their decedent's brain was available

11

for recovery if they so desired.[4]  It appears that the coroner's
policy of not notifying the next-of-kin that he had retained the
brains of their decedents was motivated by nothing more than a
desire to avoid inflicting additional unnecessary pain on
Plaintiffs.[5]

In any event, these differences in facts likely to do
not take this case outside the broad holding in Brotherton that
there is a substantial and protectable constitutional interest in
the dead body of a relative or loved one.  It is true, as
Defendants correctly observe, that state law gives the coroner
virtually unfettered discretion to decide when and how to perform
an autopsy and to retain the body, perhaps indefinitely, if
needed to determine the cause of death.  On the other hand, the
same statutory provisions which vest the coroner with his
authority also give the deceased's next of kin the right of
ultimate disposition of the body.  See Ohio Rev. Code § 313.14
("The next of kin, other relatives, or friends of the deceased

---

[4]     In a case with similar facts, but not presenting
federal constitutional questions, a California court of appeals
stated with regard to returning removed organs to the next-of-kin
following an autopsy: "Their return to the plaintiff (if such
were possible) after having served their purpose in aiding in the
determination of the cause of death, could have caused her only
embarrassment, and, perhaps, horror[.]"  Gray v. Southern Pac.
Co., 68 P.2d 1011, 1015 (Cal. Ct. App. 1937).

[5]     As a result of the filing of this lawsuit, the
coroner's office has in fact begun notifying the next-of-kin when
it must retain organs for examination.  Testimony from the deputy
coroners shows that in many cases, the next-of-kin would rather
not know that the coroner had retained organs of their decedent.

12

person, in the order named, shall have prior right as to disposition of the body of such deceased person."); see also Everman, 561 N.E.2d at 550 (recognizing that § 313.14 creates a "possessory right of a spouse or other appropriate member of the family to the body of the deceased person for the purpose of preparation, mourning, and burial."). Supplementing § 313.14, the Everman decision, and the cases cited by the Court in Brotherton, are two very early Ohio cases which recognize a spousal right of "decent sepulture," or, in other words, the right to give his or her spouse a decent burial. See McClellan v. Filson, 5 N.E. 861, 862 (Ohio 1886); Farley v. Carson, 8 Ohio Dec. Reprint 119 (Ohio Dist. Ct. 1880)(also available at 1880 WL 6831). Thus, Ohio law shows that the next of kin have a substantial interest in the bodies of their decedents for final disposition or burial.

     Although it is a given that of necessity tissue and fluids will be destroyed a result of performing the autopsy, the right to take possession of what remains of the deceased's body following the completion of the autopsy in no way conflicts with the coroner's admittedly superior prior interest to take custody of the body and complete what procedures are necessary to determine the cause of death. The right and duty of the coroner to perform the autopsy can co-existent with the right to possess what is left of the remains following the autopsy for preparation, mourning, and burial. In practical terms, however, in future cases this may mean that where examination of the brain

13

is required to determine the cause of death, the coroner will simply exercise his statutory authority under § 313.15 to retain the entire body for the several weeks it takes to complete fixation and analysis. Whether this a desirable outcome of this litigation is a different question, but in light of state law, such a decision or policy seemingly would not be an infringement on any property interests of the next-of-kin.

Accordingly, the Court concludes that Plaintiffs do have a cognizable constitutional property interest in their decedent's body parts which the coroner's office violated when it disposed of their decedents' brains without prior notice. Therefore, Defendants' motion for summary judgment on this issue is not well-taken and is **DENIED**; Plaintiffs' motion for summary judgment on this issue is well-taken and is **GRANTED**.

B. <u>Eleventh Amendment Immunity</u>

Defendants next argue that they are immune from suit under the Eleventh Amendment because the coroner is mandated to follow state law in carrying out his duties. Thus, Defendants argue, the coroner is deemed to be a state actor and is entitled to the immunities provided by the Eleventh Amendment.

A county official who is sued for complying with the mandates of state law is entitled to Eleventh Amendment sovereign immunity. <u>Gottfried v. Medical Planning Serv., Inc.</u>, 280 F.3d 684, 692 (6th Cir. 2002); <u>Brotherton v. Cleveland</u>, 173 F.3d 552, 566 (6th Cir. 1999). In <u>Brotherton</u>, the Court indicated,

14

however, that where state law provides authority to perform an action, but does not dictate a method of performance, the municipal actor is not entitled to Eleventh Amendment immunity. See Brotherton, 199 F.3d at 567 ("Ohio law allowed Dr. Cleveland to harvest corneas in the course of his actions as a county coroner, but it did not dictate a method."). Defendants' argument may be correct insofar as it concerns the coroner's responsibilities to determine when an autopsy is necessary and how it should be performed. This logic may also extend to decisions related to what organs to retain for purposes of determining the cause of death and how long to retain them, as well as decisions related to when to release the decedent's body to the family members. But see Brotherton, 199 F.3d at 563 ("[I]n his daily operations, the Hamilton County Coroner acts as an agent of Hamilton County, and not the State of Ohio."). As stated above, however, Plaintiffs do not contest the coroner's authority to make those decisions, nor do they contend in this case that the coroner violated any constitutional right in the context of making those decisions. Rather, Plaintiffs simply claim that they had a constitutional right to be notified by the coroner when he no longer needed the organs to ascertain the cause of death so that they could control the disposition of the remains.

The Court's research has not discovered any state authority which mandates the coroner's actions with regard to disposition of bodies in his custody, at least insofar as it would preclude the return of retained organs to the decedent's family or friends.  To the contrary, as stated above, Ohio Rev. Code § 313.14 specifically directs the coroner to release the decedent's body to the next of kin.  This section reasonably may be interpreted to include requiring the return of the decedent's body parts as well.  The Court does note that Ohio Rev. Code § 3734.01(R) defines "infectious waste" as, inter alia, "Pathological wastes, including, without limitation, human and animal tissues, organs, and body parts, and body fluids and excreta . . . removed or obtained during surgery or autopsy or for diagnostic evaluation[.]"  The Court further notes that Ohio has enacted an entire regulatory scheme for the disposal of solid and hazardous wastes.  See generally Ohio Rev. Code Chapter 3734. Nonetheless, the Court does not believe that anything in the hazardous waste statutes limits the coroner's discretion to return the decedent's body parts to the family members.  If they did, it would seem unlikely that the coroner would be permitted to return organs that do not requiring fixing to the body cavity prior to releasing the body to the family, as is the current practice.  Additionally, the Court observes that Ohio has enacted a statute which specifically governs the cremation of body parts.

16

<u>See</u> Ohio Rev. Code § 4717.25. Therefore, it does not appear that the hazardous waste disposal provisions mandate the coroner's actions with regard to disposition of retained body parts because he could, at a minimum, release the body part to a funeral home or crematorium of the family's choice for disposition according to § 4717.25.

The Court finds that under the circumstances of this case, the coroner, in retaining and disposing of the brains of Plaintiffs' decedents without notice, was not acting as a state actor because state law did not mandate the manner in which disposition of the body parts was to be accomplished. Moreover, state law did not prohibit the coroner from giving Plaintiffs notice of his intent to dispose of the decedents' brains. Accordingly, the Court concludes that the County Defendants are not entitled to Eleventh Amendment immunity.

### C. <u>Qualified Immunity</u>

Defendant Parrott argues that he is entitled to qualified immunity in his personal capacity because his conduct did not violate a clearly established constitutional right of which a reasonable official would have known.

A public official is entitled to qualified immunity, and thus shielded from suit under § 1983, for his actions if his conduct does not violate a clearly established statutory or constitutional right of which a reasonable official would have

17

known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The
contours of the right must be sufficiently clear that a
reasonable official would understand that what he was doing
violates that right.  Anderson v. Creighton, 483 U.S. 635, 640
(1987).  The official, however, is only entitled to qualified
immunity for actions taken in objective good faith within the
scope of his duties.  Id. at 849 fn.34.

Determining a public official's entitlement to
qualified immunity presents a two-step inquiry.  First, the court
must determine, judged in the light most favorable to the party
asserting the injury, whether the facts alleged show that the
officer's conduct violated a constitutional right.  Saucier v.
Katz, 533 U.S. 194, 201 (2001).  If no constitutional right would
have been violated on the facts alleged, the inquiry stops and
the officer will be entitled to qualified immunity.  Id.  If a
violation can be made out based on a favorable view of the
pleadings, the court must determine whether the right at stake
was clearly established.  Id.

In determining whether a constitutional right is
clearly established, the court must first look to decisions of
the U.S. Supreme Court, then to decisions of the Sixth Circuit,
and, finally, to decisions of other circuits.  Walton v. City of
Southfield, 995 F.2d 1331, 1336 (6th Cir. 1993) (citing Daugherty
v. Campbell, 935 F.2d 780, 784 (6th Cir. 1991)).  It is only the
extraordinary case that will require a reviewing court to look
beyond Supreme Court and Sixth Circuit decisions.  Id.  The

18

questions of whether the right alleged to have been violated is clearly established and whether the official reasonably could have believed that his conduct was consistent with the right the plaintiff claims was violated, are ones of law for the court. Id. However, if genuine issues of material fact exist as to whether the official committed the acts that would violate a clearly established right, then summary judgment is improper. Id.; see also Jackson v. Hoylman, 933 F.2d 401, 403 (6th Cir. 1991) (affirming district court's denial of summary judgment on the issue of qualified immunity where the parties' factual account of the incident differed).

Based on the above standard, the Court concludes that Dr. Parrott is not entitled to qualified immunity. There is no dispute in this case that the coroner's office retained and then disposed of Plaintiffs' decedents' brains without any notice to Plaintiffs. As explained above in Part III.A, Plaintiffs have established uncontested facts which demonstrate that Defendants violated their constitutional right to receive notice prior to the disposal of their decedent's body parts. The Court also finds that this right was clearly established at the time the coroner's office committed the acts in question here. As the Court stated above, supra, at 10-15, in 1991, Brotherton very broadly and very clearly held that family members have a property interest in their decedent's body parts which is protected by the due process clause of the Fourteenth Amendment. Finally, a reasonable coroner in this judicial circuit would have known that

19

disposing of body parts without notice to the decedent's next of kin would have violated that right. That seems especially true where, as Plaintiffs observe, this same coroner's office was involved in the case that established the right at stake here.

Dr. Parrott argues that he was only acting under the compulsion of state statutes which Plaintiffs do not allege are unconstitutional. As explained above, however, the statutes which establish the coroner's duties and authority do not mandate or otherwise restrict his discretion in providing notice to family members prior to disposition of bodies or body parts in his custody. Therefore, this argument does not establish Dr. Parrott's entitlement to qualified immunity.

Accordingly, the Court concludes that Dr. Parrott is not entitled to qualified immunity.

E. <u>Quasi Judicial Immunity</u>

Dr. Parrot next argues that he is entitled to quasi-judicial immunity because the actions complained of arose out of the performance of his statutory duties to determine the cause of the death of the decedents. Under Ohio law, determination of the cause of death by the coroner is deemed to be a quasi-judicial act. <u>Everman</u>, 561 N.E.2d at 549.

Absolute judicial immunity extends to non-judicial officials who perform quasi-judicial duties. <u>Bush v. Rauch</u>, 38 F.3d 842, 847 (6th Cir. 1994). A quasi-judicial duty is one which is so integral or intertwined with the judicial process that the person who performs it is considered an arm of the

20

judicial officer who is immune. <u>Id.</u> However, quasi-judicial immunity is not available for the performance of purely administrative tasks. <u>Forrester v. White</u>, 484 U.S. 219, 229 (1988).

Assuming without deciding that for purposes of federal law the actual performance of an autopsy by the coroner is a quasi-judicial act, the Court finds that the release of the body to the next-of-kin is purely an administrative task. As indicated above, while the coroner's authority to decide when and how to perform an autopsy appears to be absolute, state law also commands that he retain the body for only as long as it takes to determine the cause of death. Ohio Rev. Code § 313.15. Once the coroner makes that decision, whenever that may be, he has fulfilled the alleged quasi-judicial aspect of his duties. The release of the body to the next of kin, although commanded by state law, does not fulfill any judicial purpose. For lack of a more artful analogy, this task is simply a return of property in the coroner's custody to its rightful owner. Therefore, this task of releasing the deceased's body to the next of kin can be regarded as no more than a purely administrative duty.

Accordingly, the Court concludes that Dr. Parrott is not entitled to quasi-judicial immunity.

F. <u>Adequacy of Post-Deprivation Remedies</u>

Defendants next argue that, assuming that Plaintiffs have established a constitutionally protected property interest in their decedents' body parts, state law post-deprivation

21

remedies are adequate to redress the injuries.  Despite this contention, where predeprivation notice is feasible, the existence of adequate state law post-deprivation remedies is irrelevant.  <u>Moore v. Board of Ed. of Johnson City Sch.</u>, 134 F.3d 781, 785 (6th Cir. 1998); <u>Harris v. City of Akron</u>, 20 F.3d 1396, 1401-02 (6th Cir. 1994).  In this case, as illustrated by the fact that the coroner's office now contacts the next of kin prior to the disposing of retained organs, it was entirely feasible to give predeprivation notice to Plaintiffs.  Accordingly, the Court need not consider whether a state law replevin action is sufficient to redress Plaintiffs' injuries.

G. <u>The Hamilton County Commissioners</u>

The Hamilton County Commissioner Defendants move for summary judgment on the grounds that they do not direct or control the activities of the Hamilton County Coroner's Office.  The suit against the County Commissioners in their official capacities is really a lawsuit against Hamilton County.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  A municipality may only be held liable for a constitutional deprivation under § 1983 if the deprivation was the result of an official policy or custom.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 690 (1978).  However, a municipality may not be held liable for a § 1983 violation under a theory of respondeat superior.  <u>Id.</u> at 691.  Proof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u> unless proof of

22

the incident includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a policy maker.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).  A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing formal policy with respect to the subject matter in question.  Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

Although the coroner's office may be autonomous in terms of oversight from Hamilton County and the Hamilton County Commissioners, that fact does not prevent the County from being liable for the coroner's actions.  Brotherton, 173 F.3d at 563. Municipal liability may be imposed where the decisionmaker has final authority to establish municipal policy with respect to the action ordered.  Pembaur, 475 U.S. at 481-83.  In this case, the Coroner's Office is an agency of the County and the coroner, as the official responsible for the morgue, obviously has the authority to establish policy on behalf the County with respect to the operation of the morgue.  See Ohio Rev. Code § 313.08(A)("In counties in which a county morgue is maintained, the coroner shall be the official custodian of the morgue.").  Therefore, the County Commissioners as representatives of Hamilton County may be held liable in their official capacities for the actions of the coroner.

23

Accordingly, the County Defendants' motion for summary judgment is not well-taken and is **DENIED.**

### H. <u>Statute of Limitations</u>

In their reply brief, Defendants argue that at least some of the Plaintiffs' claims are barred by the two year statute of limitations in Ohio for § 1983 claims. <u>Browning v. Pendleton</u>, 869 F.2d 989, 992 (6th Cir. 1989). Defendants argue that any claims arising out of autopsies which were performed more than two years prior to the filing of this lawsuit are barred.

Under § 1983, a cause of action accrues when the plaintiff knows or has reason to know of his or her injury. <u>Sevier v. Turner</u>, 742 F.2d 262, 273 (6th Cir. 1984). A plaintiff has reason to know of his or her injury when it could have been discovered through the exercise of reasonable diligence. <u>Id.</u> Defendants do not identify any particular named Plaintiff whose claim they believe is barred by the statute of limitations for failure to exercise due diligence in discovering the claim. Therefore, whether any named Plaintiff's claim is barred by the discovery rule is not properly before the Court and cannot be resolved at this time.

Defendants appear to argue that Plaintiffs should have been on notice that the coroner had retained their decedents' brains because of the very nature of an autopsy. Thus, Defendants apparently contend that the date of autopsy

24

establishes a bright line rule for commencing the limitations period.  The Court rejects this argument, however.

While the average person would understand that an autopsy most likely involves some examination of the deceased's brain, and that there would likely be some destruction of tissue, he or she likely would not know that the brain cannot be immediately examined by the pathologist and that it takes several weeks to prepare the brain for examination.  In all candor, the Court was certainly unaware of these facts prior to the filing of this lawsuit.  Lay persons generally do not have a grasp of this type of esoteric medical and scientific process.  Therefore, the Court concludes that the mere knowledge that an autopsy was performed on the decedent is insufficient to put a class member on notice that the coroner's office had retained his or her decedent's brain for purposes of commencing the running of the statute of limitations period.

Whether the absent class members were on notice of their claims also presents individual factual issues which cannot be resolved properly at the present time.  How the statute of limitations affects the claims of the class members does not affect resolution of the motion for summary judgment, although a proliferation of individual issues on this topic could affect the issue of continuing this matter as a class action.

Accordingly, Defendants' motion for summary judgment on statute of limitations grounds is not well-taken and is **DENIED.**

<u>Conclusion</u>

The Court concludes that Plaintiffs have a constitutionally recognized property interest in their decedent's brains of which the Defendant deprived them without due process of law.  Accordingly, the Court finds that Defendants' motion for summary judgment is not well-taken and is **DENIED;** Plaintiffs' motion for summary judgment is well-taken and is **GRANTED.**

**IT IS SO ORDERED**

Date<u> September 28, 2005    </u>              <u>    s/Sandra S. Beckwith      </u>
                                  Sandra S. Beckwith, Chief Judge
                                   United States District Court

26