IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATHY HAINEY, et al.                   Case No. 1:02CV 00733

      Plaintiffs                                       [Hon. Sandra S. Beckwith]
                                                          [Hon. Timothy S. Black, M.J.]

-vs-

CARL L. PARROTT, et al.

      Defendants

========================================================
**PLAINTIFFS' COUNSEL'S BRIEF RE: LODESTAR CALCULATION AND INCENTIVE AWARDS**
========================================================

Now comes plaintiffs' class counsel herein pursuant to this Court Order [*Doc.82*] and hereby submits his calculations of attorney time and expenses incurred in handling the within case since 2002 to present [filed under seal] and to address the class representatives incentive awards.

**LODESTAR**

Since counsel has already submitted his brief to the court as to his request for a one-third of the "common fund" counsel will not reiterate those legal citations and arguments.

As this Court has noted the Sixth Circuit has held that a district court may utilize a fee multiplier in cases of "exceptional success." (*Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005).  The district court may in evaluating such a request consider the 12-factor test announced in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974):

1

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

In *Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir. 2006) the Sixth Circuit reminded the district court not to ignore "the reality of litigation and the mandate of *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933 that the most important factor in determining the appropriateness of a fee award is the degree of success obtained." [referencing:*Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)].

The present case involves a very "novel" and difficult legal situation. Although this counsel first achieved legal recognition of the "right" of the next of kin to their loved one's corneas, the issue of body integrity was allegedly still at issue legally (as defendants and present defendants in *Albrecht v. Treon, MD* presently contend).

As the court can see from looking through counsel's time and notes. Several plaintiffs had gone to other attorneys who "would not take on the coroner's office." One caller indicated she had been to five attorneys who refused her case. Counsel herein was initially contacted by several local attorneys for information as to how to proceed with such a case. Plaintiffs counsel assisted those attorneys who wished to handle the matters on their own. However, those attorneys took no further legal action for such clients to counsel's knowledge.

Plaintiffs' class counsel also has been very grateful for many of the callers and those at the Fairness Hearing who "thanked" me for fighting for them for these many years. Several claimants indicated that this lawsuit has allowed them to achieve "closure." Many were victims where the families were uncertain as to why there was an autopsy and this litigation answered their query.

Another consideration is preclusion of other employment. As the court is aware, I am a sole practitioner and therefore have only a limited number of hours available. Although clients do request my services, in the last five years I have had to turn down many cases given that I just do not have the time to provide the time I believe is appropriate for the level of litigation such cases require. In the past week I have turned down seven cases due to time constraints. As is evident given this case's volume, this matter has been very time consuming demanding much researching and communicating with many class members.

A "customary fee" is difficult to provide the court given that I normally do not have an hourly charge. In the *Brotherton v. Cleveland, MD* case in 1995 I believe Judge Spiegel found my time worth $350/hour. The Court in *In Re Sulzer Orthopedics, Inc.*, 398 F.3d 778 (6th Cir. 2005) found a sliding scale of attorneys with "15 years & over" experience to be worth $500/hour.

Undeniably, Plaintiffs' class counsel is well over the fifteen year bar. I graduated from Franklin Piece Law Center in Concord, New Hampshire in 1977. I initially was employed doing defense litigation before accepting a position in Cleveland in 1979 to

3

begin representing plaintiffs in personal injury litigation. I returned "home" to Cincinnati in 1983 to open my own solo practice which I have had until present.

I am admitted to the Ohio State Bar; Kentucky Bar; Federal courts: Southern District of Ohio; Northern District of Ohio; Sixth Circuit; United States Supreme Court. I have argued before the Ohio Supreme eight times and once before the Supreme Court of Kentucky. I have argued numerous appeals before the Sixth Circuit and once before the Fourth Circuit in Richmond, Virginia.

I am a member of the Cincinnati Bar Association; Ohio Academy of Trial Lawyers; Association of Trial Lawyers of America; was board certified in trial advocacy by the National Board of Trial Advocacy; past president of the Hamilton County Trial Lawyers Association; past chairman of the Cincinnati Bar Association's Tort Committee.

I have been an invited speaker-lecturer for the Association of Trial Lawyers of America; Ohio Academy of Trial Lawyers and the Cincinnati Bar Association.

I have served as class counsel in other class action cases: e.g. *Brotherton v. Cleveland, M.D.; In re University of Cincinnati Human Radiation Litigation; Kelley v. Los Alamos Lab (Santa Fe, New Mexico); Wood v. Smart Corporation.*

Another consideration is whether the fee is contingent. As counsel has previously indicated each class representative member signed a contingency fee agreement indicating a one-third contingency fee for the within matter. The class representatives have indicated that they believe such is fair and reasonable, as expressed at Fairness Hearing. When considering the marketplace, if each class member had to hire their own

4

lawyer, they would be met at the very least with a one-third contingency fee plus expenses by most litigators, assuming they would even take the case.

The "undesirability" of the case is another consideration. Plaintiffs' class counsel has received several phone calls of a threatening nature from certain persons who are upset that I would represent such a class. My secretary has fielded several such calls and has warned me to "watch my back" given the fanatical ranting of some callers.

I have advanced all of the expenses for filing fees, depositions, copying and have taken over an additional office just for the over 18 boxes of Hainey materials.

While it appears that I have devoted at a minimum 788.53 hours to this matter to date, I am sure that I have omitted many hours since there were numerous times I would call claimants from my cell phone where I did not have my computer to make a record of such calls.

Another consideration is the amount involved and the results obtained. The County clearly believes that the amount is substantial and when comparing the result with the other "coroner photograph" settlement wherein there was clearly a higher degree of indignity, the Six Million Dollar settlement is substantial. The results we were able to obtain with negotiations goes well beyond the monetary amount. We were able to expand the law and the morals of our Society. To effectuate a substantial change in the dignity of our loved ones that can be accomplished relatively simply. Lastly, to achieve a formal change in policy at the Hamilton County Coroner's Office and a lasting Consent Decree was of highest importance to many, many class claimants. Something that could not be achieved through an ordinary lawsuit and jury award.

Indeed the results in this case have not only changed Hamilton County, but now Franklin county now provides "notice" and an opportunity to retrieve their loved one's body parts after autopsy. This case has attracted the attention not only of Ohio coroners but coroners throughout the entire country. Counsel has had corresponded with persons in Britain as well as Japan as to this issue.

In determining the appropriate percentage from the Fund, the Sixth Circuit has held that courts must determine the reasonableness of the fee request in light of the particular circumstances of the litigation. (*Rawlings*. at 516). Further it was stated that "creative lawyering ***will earn the higher fee award from this Court, as it represents the hallmark of a gifted professional." *In re Cincinnati Gas & Electric Company Securities Litigation*, 643 F.Supp. 148, 152, S.D.Ohio, 1986. That court noted that these awards are "expressed in terms of a percentage of the benefit created; typically the percentages range from **20%- 50%."** (*Id.* at 150). Another district court in this circuit found that "throughout the Sixth Circuit, attorneys' fees in class actions have ranged from **20%-50%**. *Manners v. American General Life Ins. Co.,* 1999 WL 33581944 at *29 (M.D.Tenn. Aug.11, 1999). See, e.g., *In re Cincinnati Microwave Inc. Sec. Litig*., Consolidated Master File No. C-1-95-905, Order and Final Judgment (W .D. Ohio Mar. 21, 1997) (awarding **30%**); *Adams v. Standard Knitting Mills, Inc.,* [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) 96,377 (E .D. Tenn. Jan. 6, 1978) (**35.8%** award)." Courts in other circuits have likewise adopted the **20%-50% range** as a reasonable awarding of fees. *In re Warner Communications Securities Litigation*, 618 F.Supp. 735, D.C.N.Y., 1985. See *Zinman v. Avemco Corp*., [1978 Tr. Binder] Fed.Sec.L.Rep. (CCH) 96,325, at 93,092-93 (E.D. Pa. 1978) (**50% award**); *Baron v. Commercial & Industrial*

6

*Bank of Memphis*, [1979-80 Tr. Binder] Fed.Sec.L.Rep. (CCH) 97,132, at 96,244 (S.D.N.Y.1979) (**36% award**); and *Clark v. Cameron-Brown Co.,* [1981 Tr. Binder] Fed.Sec.L.Rep. (CCH) 98,014 (M.D.N.C.1981) (**35% award**).

## INCENTIVE AWARDS:

The Sixth Circuit has stated: "Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit. Numerous courts have authorized incentive awards. See *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.), cert. denied, ___ U.S. ___, 123 S. Ct. 108 (2002); *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d at 463; see also In re S. Ohio Corr. Facility, 175 F.R.D. 270, 273 & n.3 (S.D. Ohio 1997) (collecting cases). These courts have stressed that incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895 (6th Cir. 2003).

Here the class representatives came forward for representation with cases that involved different relationships; son; father; brother.  Each had a good personal case without statute of limitations issues.  This was (as defense pointed out) a considerable legal issue which could have foreclosed many claimants from any compensation.  The representative class members were able to weather that attack (as set forth in the motion practice previously before this court).  During settlement negotiations the individual class representatives could have gone on their own with their own individual cases.  However, they chose to negotiate on behalf of all of the other class members to achieve justice for all families and most importantly to negotiate a "waiver" of statute of limitations defense

7

for many of those class members who might arguably have or should have known about the missing body part and be foreclosed on a statute of limitations basis.

The emotional stress on each of the individual class members has been substantial. These individuals learned about this "taking" approximately five years ago and had that eating at them during all these years. Many of the class members just learned of the "taking" during this past year. Without disclosing confidentiality, I found myself in the role of consoler, peacemaker and coach on numerous occasions throughout the litigation process with the class representatives given the deep emotions involved.

The individual class members had to undergo hours of oral deposition questioning causing serious emotional distress in having to relive the instances and to deal with the knowledge of what took place to their loved ones bodies. They were subjected to numerous discovery requests; viz: interrogatories, request for production; request for all medical/psychological records.

The class representatives had to take many days off of their work to attend depositions and come to the mediation sessions with the Sixth Circuit mediator.  All of which was obviously not reimbursed.

It is fair to conclude that without the fortitude and perseverance of these particular class representatives, the other class members may well have received nothing.
There were times during the mediation process that individual lawsuits were a consideration, but the class representatives chose to stand for the class as a whole.

The individual awards of Fifty Thousand Dollars ($50,000) for the representative class members were a negotiated issue during mediation. While such is clearly in the Court's discretion, such amount is not objected to by defendants. The defendants were

there throughout the litigation to see all that the class representatives were put through while still (at that point) unsure of any recovery.

**CONCLUSION:**

The Sixth Circuit has held: "We review a district court's award or denial of attorneys' fees for an abuse of discretion. *Cramblit v. Fikse,* 33 F.3d 633, 634 (6th Cir.1994). It is within the district court's discretion to determine the "appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir.1993). The district court's award of attorneys' fees in common fund cases need only be "reasonable under the circumstances. Id." (*Bowling v. Pfizer, Inc.,* 102 F.3d 777 (6th Cir. 1996).

*WHEREFORE*, counsel respectfully submit and move the Court to approve the attorney fee of a one-third of the "common fund" since such is "reasonable under the circumstances" and to approve the proposed incentive awards given the unique and substantial contributions this case has brought forth.

                                                    Respectfully submitted,

                                                    /s/ John H. Metz
                                                    John H. Metz [#0019039]
                                                    4400 Carew Tower
                                                    441 Vine Street
                                                    Cincinnati, Ohio 45202
                                                    (513) 241-8844
                                                    Fax: (513) 241-6090
                                                    Class Counsel for Plaintiffs

## Certificate of Service

I hereby certify that a copy of the foregoing was served upon all counsel of record by ordinary U.S. Mail, postage prepaid on this 23rd day of October, 2007.

/s/ John H. Metz
John H. Metz